# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD INTERNATIONAL BANK, LTD., ET AL. and the OFFICIAL STANFORD INVESTORS COMMITTEE, | § § § § § § | |
| Plaintiffs, | § § | Case No. 3:11-cv-117-N |
| v. | § § | (Consolidated with Case No. 3:11-cv-293-N) |
| IMG WORLDWIDE, INC. and INTERNATIONAL PLAYERS CHAMPIONSHIP, INC., | § § § § | |
| Defendants. | § | |

## DEFENDANTS IMG WORLDWIDE, INC.'S AND INTERNATIONAL PLAYERS CHAMPIONSHIP, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CONSOLIDATED COMPLAINT

Mark J. MacDougall
Thomas P. McLish
Lauren B. Kerwin
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Ave., N.W.
Washington, D.C. 20036-1564
(202) 887-4000 (Telephone)
(202) 887-4288 (Facsimile)

Mary L. O'Connor
Joshua L. Hedrick
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Ave., Ste. 4100
Dallas, Texas 75201
(214) 969-2800 (Telephone)
(214) 969-4343 (Facsimile)

ATTORNEYS FOR DEFENDANTS
IMG WORLDWIDE, INC. AND
INTERNATIONAL PLAYERS
CHAMPIONSHIP, INC.

I. <u>INTRODUCTION</u>

Defendants IMG Worldwide, Inc. ("IMG") and International Players Championship, Inc. "IPC") file this Reply in support of their Motion to Dismiss the First Amended Consolidated Complaint (the "Complaint") that was filed by Ralph S. Janvey in his capacity as court-appointed receiver for Stanford International Bank, Ltd., *et al.* and the Official Stanford Investors Committee (collectively, "Plaintiffs").  Plaintiffs' Opposition fails to address the Complaint's deficiencies – namely, its omission of specific facts in support of Plaintiffs' claims and standing. Therefore, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

II. <u>LEGAL ARGUMENT</u>

A. <u>Plaintiffs Fail to Allege Sufficient Facts to Support Claims.</u>

Plaintiffs fail to explain how their Amended Complaint satisfies the requirements set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), that a complaint must contain concrete factual allegations that set forth a plausible claim to relief.  Plaintiffs' Complaint, rather, provides only "labels," "conclusions," and "formulaic recitation[s] of the elements of [each] cause of action." *Twombly*, 550 U.S. at 555. Even though they amended their Complaint in response to the IMG Defendants' motion, Plaintiffs still do not allege *how* the IMG Defendants furthered the Stanford Ponzi scheme or were unjustly enriched – they merely conclude that it is so.  Moreover, Plaintiffs' Complaint and Opposition are predicated on a misinterpretation of fraudulent transfer law, assuming that *every* payment for services rendered to a Ponzi scheme is a fraudulent transfer subject to avoidance pursuant to the Texas Uniform Fraudulent Transfer Act ("TUFTA").  This is not the law.

      1. <u>Constructive Fraud Claim Fails: Reasonably Equivalent Value Can Be Provided to a Ponzi Scheme</u>

The Complaint fails to state a claim for avoidance of a constructively fraudulent transfer because it does not allege any facts to show that transfers to the IMG Defendants were made

1

"without receiving a reasonably equivalent value in exchange." TEX. BUS. & COM. CODE ANN. § 24.006(a). Plaintiffs merely recite that "the Stanford Parties did not receive reasonably equivalent value in exchange" for funds paid to the IMG Defendants (Pls.' Opp'n ¶ 3 at 2) but fail to allege any concrete facts to support that claim.[1] Plaintiffs attempt to stretch the holdings of *Warfield v. Byron*, 436 F. 3d 551, 560 (5th Cir. 2006), and *Janvey v. Alguire*, No. 3:09-cv-0724-N (N.D. Tex. Sept. 6, 2011), ECF No. 696 ("Alguire Order") to claim, in essence, that *all* payments for services provided to a Ponzi scheme – whether by a broker selling fraudulent securities or by a utility company supplying the business with its electricity – are fraudulent transfers because such services can *never* confer reasonably equivalent value. Pls.' Opp'n ¶ 6 at 3; Compl. ¶ 44. That is an extraordinary proposition of law under any circumstances. It is even more so here because that argument runs headlong into relevant, binding precedent of the Fifth Circuit.

In *Hannover Corp. v. Hayes*, a trustee sought to avoid alleged fraudulent transfers "[o]n account of the allegedly thoroughgoing fraudulent character of [the debtor's business]." 310 F.3d 796, 803 (5th Cir. 2002). The Fifth Circuit, however, rejected the trustee's categorical methodology and concluded that the transfer could not be avoided under the Bankruptcy Code or under similar State law. *Id.* at 802-804. The trustee's theory in this case is not materially different from that urged by the Trustee in *Hannover* and, as a result, the Complaint, in the absence of additional factual allegations, does not state a claim against the IMG Defendants. *See Fairchild Aircraft Corp. v. Butler Aviation Int'l, Inc.*, 6 F.3d 1119, 1126-1127 (5th Cir. 1993)

---

[1] Plaintiffs try to buttress the Complaint by making new allegations in their Opposition that appear nowhere in the Complaint. Plaintiffs claim that the IMG Defendants "prolonged and exacerbated the Stanford Ponzi fraud by attracting new investors through advertising, burnishing the Stanford image, and providing the Stanford Parties with the imprimatur of legitimacy." Pls.' Opp'n ¶ 7 at 4. Because they are not in the Complaint, the Court should ignore these allegations. Even if they were in the Complaint, these allegations would still be insufficient, because they do not make plausible Plaintiffs' assertion that the services the IMG Defendants provided were not of reasonably equivalent value to the payments that were made.

(rejecting the proposition that "anyone who provides, deals with, or invests in an entity in financial straits [does] so at his or her peril under § 548 [of the Bankruptcy Code]."). [2]

Other courts support the Fifth Circuit's analysis, holding that "payments made by a debtor in furtherance of a Ponzi scheme" are *never* "automatically avoidable." *In re World Vision Entm't, Inc.*, 275 B.R. 641, 658 (Bankr. M.D. Fla. 2002).[3] "Simply because a debtor conducts its business fraudulently does not make every single payment by the debtor subject to avoidance. If so, every vendor supplying goods to the debtor would receive an avoidable fraudulent transfer when the debtor paid the vendor's invoice." *Id.* Courts have also specifically held that payments for services provided to a Ponzi scheme do not automatically constitute avoidable fraudulent transfers. *See Laddin v. Edwards*, No. 1:02-CV-3327-TWT, 2006 WL 1097491, at *6 (N.D. Ga. Apr. 21, 2006) ("routine payment of fees [for services] . . . – even by an insolvent corporation – are not fraudulent transfers"); *In re First Commercial Mgmt. Group, Inc.*, 279 B.R. 230, 239-240 (N.D. Ill. 2002) (commissions paid to brokers for services rendered were not avoidable because commissions were in the range earned by others, the brokers had no knowledge of the Ponzi scheme, and there was no evidence that the broker's actions were fraudulent); *Balaber-Strauss v. Lawrence*, 264 B.R. 303, 308 (S.D.N.Y. 2001) (commissions paid

---

[2] These decisions address the fraudulent conveyance provisions of the Bankruptcy Code. "[T]he Uniform Fraudulent Transfer Act and the United States Bankruptcy Code are of common ancestry; cases under one are considered authoritative under the other." *GE Capital Commercial, Inc. v. Wright & Wright, Inc.,* No. 3:09-cv-572-L, 2009 WL 5173954, at *7 n.1 (N.D.Tex. Dec. 31, 2009) (internal citation omitted); *see also* Collier on Bankruptcy § 548.01 (2011) (noting that Uniform Fraudulent Transfer Act largely tracks the language of Bankruptcy Code § 548); *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) (relying on Bankruptcy Code in interpreting TUFTA provision).

[3] *See also In re Financial Federated Title & Trust, Inc.*, 309 F.3d 1325, 1332-1333 (11th Cir. 2002) (rejecting a rule that all transfers from a Ponzi scheme are avoidable as a matter of law); *In re Phoenix Diversified Inv. Corp.*, No. 08-15917-EPK, 2011 WL 2182881, at *3 (Bankr. S.D. Fla. June 2, 2011) (existence of a Ponzi scheme is insufficient to show that transfer was made "with fraudulent intent" or was "necessary to the continuance of the fraudulent scheme"); *In re Pearlman*, 440 B.R. 900, 904-905 (M.D. Fla. 2010); *In re Manhattan Inv. Fund Ltd.*, 397 B.R. 1, 22 (S.D.N.Y. 2007); *In re First Commercial Mgmt. Group, Inc.*, 279 B.R. 230, 235 (N.D. Ill. 2002) (rejecting trustee's argument that commissions paid in the context of a Ponzi scheme were fraudulent as a matter of law); *Daly v. Deptula* (*In re Carrozzella & Richardson*), 286 B.R. 480, 490-91 (D. Conn. 2002) ("There is nothing in the statute to support a finding that the Debtor did not receive 'reasonably equivalent value' . . . simply because the Debtor was engaged in a Ponzi scheme.").

to brokers for services rendered were not avoidable because services were "lawful and customary," the brokers had no knowledge of the Ponzi scheme, and there was no evidence that the payments were unreasonably high or excessive).

Plaintiffs, therefore, are incorrect in arguing that merely alleging that the Stanford Parties were operating a Ponzi scheme is enough to support the conclusory assertion that the IMG Defendants did not provide reasonably equivalent value in return for the payments at issue. Compl. ¶¶ 39, 44. Plaintiffs have not alleged any facts supporting their legal conclusion that the IMG Defendants failed to provide reasonably equivalent value. They do not claim that the IMG Defendants had knowledge of the Ponzi scheme, that the services provided were unlawful, or that the fees the IMG Defendants received pursuant to contractual arrangements exceeded market value. Without additional facts, the Court cannot accept Plaintiffs' legal conclusions regarding constructive fraud. *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555.

Central to Plaintiffs' opposition is its invocation of the decisions in *Warfield* and *Alguire*. That argument fails to come to grips with the profound difference between those cases and this case. Neither *Warfield* nor *Alguire* involve independent vendors supplying services on the open market, as the IMG Defendants did here. The defendant in *Warfield* was a broker actively selling the Ponzi scheme's fraudulent securities, and there was evidence he knew of the scheme. 436 F. 3d at 559-60. The defendants in *Alguire* were actual employees of the Stanford entities engaged in the Ponzi scheme, rather than independent businesses like the IMG Defendants. Moreover, the Court's opinion addresses only actual fraud claims, which do not require the Plaintiffs to allege lack of reasonably equivalent value. Alguire Order at 11-12. These decisions, therefore, do not address the facts of this case and do not support Plaintiffs' broad contentions.

The theory underlying Plaintiffs' constructive fraud claim against the IMG Defendants – that *any* payments for services by a Ponzi scheme are fraudulent transfers – is plainly inconsistent with the text of TUFTA and Fifth Circuit precedent. It should be dismissed.

2. Actual Fraud Claim Fails: Defenses Appear on Face of Complaint

Plaintiffs' claim pursuant to Section 24.005(a) of TUFTA, for actual fraud, also fails because the defenses of reasonably equivalent value and good faith appear on the face of the Complaint.[4] First, Plaintiffs' bald assertions that the IMG Defendants did not provide reasonably equivalent value are contradicted by their admission regarding the valuable services that the IMG Defendants provided. Compl. ¶ 4 ("The payments at issue in this complaint are related to golf endorsement fees; fees and title sponsorship for the Stanford International Pro-Am; Vijay Singh's media placement campaign; [and] other sponsorship fees for Vijay Singh."). Moreover, as explained above, Plaintiffs' theory that payments for services rendered to a Ponzi scheme by definition are always without reasonably equivalent value is wrong.

Second, the good faith defense also appears on the face of the Complaint given the IMG Defendants' roles as third party vendors independent of the Ponzi scheme. In evaluating good faith, courts look to "the actions and knowledge, both actual knowledge and imputed knowledge, of the recipient." *World Vision*, 275 B.R. at 658. Third party vendors are entirely distinct from insiders in this regard and "probably can demonstrate good faith with relative ease." *Id.* The IMG Defendants were independent service providers, thus raising the good faith defense, and the Complaint states no facts that would suggest that they acted in anything other than good faith.

---

[4] TUFTA provides that "[a] transfer or obligation is not voidable under Section 24.005(a)(1) of this code against a person who took in good faith and for a reasonably equivalent value." TEX. BUS. & COM. CODE ANN. § 24.009(a).

3.     Remaining Claims Fail

Plaintiffs' claim for unjust enrichment likewise fails under *Twombly* and *Iqbal*. This Court's decision in *Alguire* is inapposite here because the complaint in *Alguire* included at least some specific facts in support of the unjust enrichment claim.[5] In contrast, the Complaint against the IMG Defendants merely recites the elements of the cause of action without providing specific facts in support. Furthermore, an unjust enrichment claim is unavailable here because the services that IMG and IPC provided to the Stanford entities are governed by express contracts between the parties. *See*, *e.g.*, *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001). Finally, Plaintiffs' Opposition fails to address the missing elements of a constructive trust claim, particularly that the Defendants have engaged in any fraudulent conduct. Pls.' Opp'n at 8.

B.     **Claims Based on Transfers Made in 2006 are Barred by TUFTA's Statute of Repose.**

Plaintiffs rely on the Court's ruling in *Janvey v. Democratic Senatorial Campaign Committee, Inc.,* No. 3:10-cv-0346-N, 2011 WL 2466156 (N.D. Tex. June 22, 2011) ("DSCC Order"), to contend that certain claims are not barred by TUFTA's statute of repose, but that case is distinguishable. *See* Pls.' Opp'n ¶¶ 18-19 at 9-10. In the DSCC case, which was filed on February 19, 2010, the Court found that the receiver could not have discovered the transfers at issue within three days of his appointment on February 16, 2009. DSCC Order at *7. The Court did not provide a definitive rule as to precisely when after the receiver's appointment notice of transfers might be attributed to him.

---

[5] *See* Alguire Order at 17; Second Amended Complaint at ¶ 2, *Janvey v. Alguire*, No. 3:09-cv-0724-N (N.D. Tex. Dec. 18, 2009), ECF No. 156 ("This fraud endured, in part, by incentivizing a sales force and its support staff with big commissions and other compensation"); *id.* ¶ 4 ("The Stanford Defendants kept their fraudulent scheme going by employing the Former Stanford Employees to lure new investors and then divert the investors' funds for the Stanford Defendants' own illicit purposes."); *id.* ¶¶ 28-29.

The actual fraud claims against the IMG Defendants were filed nearly one year after the DSCC case and nearly two years after the Receiver's appointment: on January 18, 2011 (against IMG) and February 15, 2011 (against IPC). Although the Receiver does not allege when he discovered the transfers at issue, they "could reasonably have been discovered" within eleven months or one year of his appointment. TEX. BUS. & COM. CODE ANN. § 24.010(a)(1). The DSCC Order does not preclude this argument. As is evident from the face of the Complaint, Plaintiffs' claims based on 2006 transfers are barred by TUFTA's statute of repose.

Moreover, Plaintiffs' contention that the Stanford scheme was complex, necessitating many months to discover the alleged transfers to the IMG Defendants (Pls.' Opp'n ¶ 19 at 10), contradicts their view of the law on fraudulent transfers. Under their view, Plaintiffs merely needed to identify every service provider utilized by Stanford and the amount paid to each. Plaintiffs do not, and cannot, allege facts to establish that this required more than eleven months.

  **C.**  **The Complaint Fails to Allege *Facts* Establishing Plaintiffs' Standing.**

Although the Plaintiffs recite the basic elements of standing (Pls.' Opp'n ¶ 22 at 11-12), they ignore their obligation "to allege facts" demonstrating that they satisfy those elements in relation to the fraudulent transfer and unjust enrichment claims set forth in the Complaint. *Warth v. Seldin*, 422 U.S. 490, 518 (1975). Rather than citing or providing factual allegations to support their standing, Plaintiffs rely on their postulation that because the relevant Stanford Parties "were running a Ponzi scheme and paid [the] Defendants with funds" paid by investors, the Trustee has standing to seek avoidance of those transfers as "fraudulent[ ] transfer[s]." Compl. ¶ 41; *see also* Pls.' Opp'n ¶ 22 at 12 (the "fraudulent transfers identified in the Amended Complaint" caused injury). Plaintiffs' theory overlooks that the Supreme Court instructs that this Court cannot infer standing to bring a lawsuit. As a result, Plaintiffs' response wholly fails to

7

rebut the principal standing argument set forth in Defendants' motion to dismiss and, accordingly, the Complaint should be dismissed.

The Supreme Court has directed that "[a] federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990). Yet, this is precisely what Plaintiffs invite this Court to do. Conspicuously absent from Plaintiffs' response is a single citation to a factual allegation (as opposed to conclusion) in the Complaint establishing that the actions of *these* Defendants harmed the Plaintiffs or advanced the alleged Ponzi scheme in any manner. Likewise, the Complaint does not contain any factual allegations that the services provided by Defendants were not lawful or customary, that the Defendants had knowledge of the alleged Ponzi scheme, or that the payments to Defendants were not "within the range of values for which the transferor would have sold the assets in an arm's length transaction." TEX. BUS. & COM. CODE ANN. § 24.004(d). In the absence of factual allegations to establish these points, the Plaintiffs wholly fail to set forth facts sufficient to establish their standing to assert the claims or entitlement to the relief set forth in the Complaint. *See Whitmore*, 495 U.S. at 155 (Plaintiff must "clearly and specifically set forth facts sufficient to satisfy . . . Art. III['s] standing requirements.").

Moreover, it is no response to suggest, as the Plaintiffs do, that this Court "has already ruled that the Receiver has standing to assert fraudulent transfer claims on behalf of creditors." Pls.' Opp'n ¶ 23 at 12 (citation omitted). That argument conflates the Receiver's legal authority to assert valid claims and the Court's independent duty to ensure that the exercise of its jurisdiction is limited to those cases in which the Receiver "allege[s] personal injury *fairly traceable to the defendant's allegedly unlawful conduct* and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984) (emphasis added) (citation omitted).

Thus, the district court's conclusions that Plaintiffs have standing to assert claims against other defendants is irrelevant to whether Plaintiffs have standing to assert claims against *these* Defendants.

In sum, the allegations purporting to establish the Plaintiffs' fraudulent transfer claim and unjust enrichment claim against these Defendants are conclusory, *see, e.g.*, Compl. ¶ 48 ("The Stanford Parties, who orchestrated the Ponzi scheme, transferred the CD Proceeds to IMG Defendants with actual intent to hinder, delay, or defraud their creditors.") and *see, e.g.*, Compl. ¶ 49 ("IMG Defendants received funds that in equity and good conscience belong to the Receivership Estate . . . and that IMG Defendants received through the taking of undue advantage *vis a vis* Stanford's investors."), and the Complaint fails to assert facts to support findings of injury, causation, and redressability. Accordingly, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). *See, e.g.*, *Steinberg v. Alpha Fifth Group*, No. 04-60899-CIV, 2008 WL 906270, at *4 (S.D. Fla. Mar. 31, 2008) (dismissing fraudulent transfer and unjust enrichment claims where plaintiff receiver failed to identify the entity on whose behalf he was suing and the allegations otherwise failed to establish standing).

**D.** **Alternatively, Plaintiffs Should be Directed to Provide a More Definite Statement of the Facts Supporting Their Claims and Their Standing.**

Plaintiffs' contention that their Complaint apprises Defendants with sufficient information to allow a responsive pleading to be framed (Pls.' Opp'n ¶ 24 at 13) further demonstrates Plaintiffs' misapprehension of the scope of their pleading obligations. *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999) (citation omitted) ("[A] complaint, which contains a 'bare bones' allegation that a wrong occurred and which does not plead any of the facts giving rise to the injury, does not provide adequate notice.") Once again, Plaintiffs fail to rebut the cases cited and principal argument asserted by Defendants' motion to dismiss.

9

In this case,[6] the Complaint alleges that funds received by Defendants from three Stanford Parties "were fraudulent transfers under applicable law or, in the alternative, unjustly enriched" the Defendants. The Complaint, however, fails to allege facts showing that the actions of *these* Defendants harmed the Plaintiffs or advanced the alleged Ponzi scheme in any manner. Likewise, the Complaint does not contain any factual allegations that the services provided by Defendants were not lawful or customary, that the Defendants had knowledge of the alleged Ponzi scheme, or that the payments to Defendants were not "within the range of values for which the transferor would have sold the assets in an arm's length transaction." TEX. BUS. & COM. CODE ANN. § 24.004(d). In the absence of these sorts of factual allegations, the Defendants have not been provided sufficient notice of the claims and causes of action against them to allow them an opportunity to respond to the claims. *See Hayward v. Chase Home Fin., LLC*, No. 3:10-CV-2463-G, 2011 WL 2881298, at *7 (N.D. Tex. July 18, 2011) (requiring more definite statement where complaint precluded defendant from reasonably framing a responsive pleading).

### III. CONCLUSION

For the foregoing reasons and those set forth in IMG and IPC's Motion to Dismiss, the Court should dismiss Plaintiffs' Consolidated Complaint against IMG and IPC with prejudice and award any other relief that the Court deems just and proper.

October 7, 2011

---

[6] Plaintiffs rely on the determination regarding the sufficiency of the Complaint in the Alguire Order to support their argument that the Complaint in this case provides sufficient information for Defendants to frame a responsive pleading. As noted in Section A, *supra*, that case involved employees of the Stanford Parties, not independent third party vendors like the IMG Defendants. Thus, the factual allegations required to provide sufficient notice of the claims and causes of action against the IMG Defendants and provide them an opportunity to respond are distinct from the factual allegations required to provide sufficient notice of the claims and causes of action against employees. *Compare, e.g., In re Phoenix Diversified Inv. Corp.*, No. 08-15917-EPK, 2011 WL 2182881, *3 (Bankr. S.D. Fla. June 2, 2011) (in the context of a Ponzi scheme "the plaintiff must show that the transfers in question w[]ere in furtherance of the Ponzi scheme.").

Respectfully submitted,

 /s/ Thomas P. McLish
Mark J. MacDougall (admitted *pro hac vice*)
District of Columbia Bar No. 398118
mmacdougall@akingump.com
Thomas P. McLish (admitted *pro hac vice*)
District of Columbia Bar No. 450993
tmclish@akingump.com
Lauren B. Kerwin (admitted *pro hac vice*)
District of Columbia Bar No. 991047
lkerwin@akingump.com
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Ave., N.W.
Washington, D.C. 20036-1564
(202) 887-4000 (Telephone)
(202) 887-4288 (Facsimile)

Mary L. O'Connor
Texas Bar No. 15186900
moconnor@akingump.com
Joshua L. Hedrick
Texas Bar No. 24061123
jhedrick@akingump.com
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Ave., Ste. 4100
Dallas, Texas  75201
(214) 969-2800 (Telephone)
(214) 969-4343 (Facsimile)

**ATTORNEYS FOR DEFENDANTS IMG WORLDWIDE, INC. AND INTERNATIONAL PLAYERS CHAMPIONSHIP, INC.**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 7th day of October 2011, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court for the Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record.

                                                  /s/Lauren B. Kerwin
                                                  Lauren B. Kerwin